**Affirmed and Opinion filed August 29, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00105-CV

---

**DONALD W. SOWELL, Appellant**

**V.**

**INTERNATIONAL INTERESTS, LP, Appellee**

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2009-07184**

---

## O P I N I O N

In this case we address an issue of apparent first impression in Texas: whether an action brought against a guarantor of payment to recover a deficiency after a non-judicial foreclosure is barred by the four-year statute of limitations in section 16.004 of the Texas Practices and Remedies Code if the action is filed more than four years after the claim on the guaranty accrued but less than two years after the foreclosure sale. We conclude that, under section 51.003(a) of the Texas Property Code, such an action is not barred by the statute of limitations. On appeal, the guarantor asserts that the creditor's claim against him is barred by the

statute of limitations and by the lender's alleged failure to mitigate damages. We affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 30, 2002, DSI-HP 2002, Ltd. ("DSI") executed a promissory note payable to Bank One, N.A. ("Bank One") in the original principal amount of $12,823,000 (the "Hobby Place Note"). The Hobby Place Note was secured by a Construction Deed of Trust (with Security Agreement and Assignment of Rents and Leases) recorded against a 596-unit apartment complex located at 11911 Martin Luther King, Jr. Blvd., Houston, Texas 77048 (the "Hobby Place Property"). The same day, appellant/defendant Donald W. Sowell executed a Guaranty Agreement for the benefit of Bank One guarantying repayment of the Hobby Place Note and all renewals, rearrangements, and extensions thereof (the "Guaranty"). The Guaranty is an absolute and unconditional guaranty of the obligations under the loan documents.

Exactly two years later, on May 30, 2004, the maturity date of the Hobby Place Note was extended to November 30, 2004 (the "Maturity Date"). On that date, the Hobby Place Note reached maturity and was not paid. According to Sowell, in December 2004, he transferred all of his ownership interest in DSI to Cobalt Capital Companies. For more than two years after the Maturity Date, Bank One and later its successor in interest JP Morgan Chase Bank, N.A. ("Chase") made no attempt to collect on the Hobby Place Note or to foreclose the lien on the Hobby Place Property. During this period, the Hobby Place Property fell into disrepair. Then, on December 22, 2006, Chase, successor by merger to Bank One, sold and assigned to appellee/plaintiff International Interests, L.P. ("International") the Hobby Place Note, the Guaranty, and the other loan documents, and assigned all of its rights to International. The balance owing on the Hobby Place Note at the

2

time of sale to International was $11,816,865.02. In addition, $658,120.94 in delinquent property taxes was owed on the Hobby Place Property in February 2007. This sum did not include penalties and fees. No payments were made to International by DSI or Sowell.

The following year, on February 6, 2007, International foreclosed its lien on the Hobby Place Property and sold it for $3,000,000 in a non-judicial foreclosure sale. A deficiency balance of $8,816,865.02 remained after crediting the sales price at foreclosure against the balance remaining on the Hobby Place Note. Almost two years later, on February 4, 2009, International filed this suit against DSI and Sowell seeking to recover the deficiency. Following a bench trial, the trial court rendered judgment against DSI and Sowell for the full deficiency amount, plus reasonable and necessary attorney's fees, court costs, and prejudgment and postjudgment interest.

## II. ISSUES PRESENTED

On appeal, Sowell asserts two issues: (1) International's claim against Sowell is a claim on the Guaranty and is barred by the four-year statute of limitations in section 16.004 of the Texas Practices and Remedies Code, because the claim accrued by December 30, 2004, yet International filed suit on February 4, 2009; and (2) International's claim is barred because the trial evidence conclusively proved that International and its predecessors in interest breached their duty under Texas law to mitigate and avoid unnecessary damages by delaying foreclosure; according to Sowell, if there had been a prompt foreclosure, there would have been no deficiency.

## III. STANDARD OF REVIEW

Sowell's appellate issues deal with two defenses he asserted, as to which he had the burden of proof. Thus, as to each of these defenses, Sowell must demonstrate on appeal that the trial evidence conclusively established all facts necessary to support the defense. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

## IV. ANALYSIS

### A. Does Property Code section 51.003 give International an independent claim against Sowell that accrued on the date of foreclosure?

International asserts that Property Code section 51.003,[1] entitled "Deficiency Judgment," provides it with an independent claim against Sowell that accrued on the date of the foreclosure sale. To address this issue and the issue of whether International's claims are barred under section 16.004 of the Texas Practices and Remedies Code ("section 16.004"), we must interpret section 51.003, which provides in its entirety as follows:

    (a) If the price at which real property is sold at a foreclosure sale

---

[1] Unless otherwise stated, all statutory references in this opinion are to the Texas Property Code.

under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.

(b) Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. The fair market value shall be determined by the finder of fact after the introduction by the parties of competent evidence of the value. Competent evidence of value may include, but is not limited to, the following: (1) expert opinion testimony; (2) comparable sales; (3) anticipated marketing time and holding costs; (4) cost of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or the cashflow generated by the property to arrive at a current fair market value.

(c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price. If no party requests the determination of fair market value or if such a request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency.

(d) Any money received by a lender from a private mortgage guaranty insurer shall be credited to the account of the borrower prior to the lender bringing an action at law for any deficiency owed by the borrower. Notwithstanding the foregoing, the credit required by this subsection shall not apply to the exercise by a private mortgage guaranty insurer of its subrogation rights against a borrower or other person liable for any deficiency.

Tex. Prop. Code Ann. § 51.003 (West 2013).

We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex. 1989). In construing a

5

statute, the court's objective is to determine and give effect to legislative intent. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent not stated in the statute. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction, but instead, we must yield to the plain sense of the words the Legislature chose. *Id.*

If the price at which real property is sold at a nonjudicial foreclosure sale under section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action to recover this deficiency must be brought within two years of the foreclosure sale and is governed by section 51.003. *See* Tex. Prop. Code Ann. § 51.003(a). In an action governed by section 51.003, if the court determines that the fair market value of the real property on the date of foreclosure is greater than the sale price of the real property at the foreclosure sale, a defendant is entitled to an offset against the deficiency as provided under section 51.003(c). *See id.* § 51.003(c). In an action governed by section 51.003, under certain circumstances the borrower is entitled to a credit based upon money received by the lender from an insurer. *See id.* § 51.003(d).

If a deficiency remains after a nonjudicial foreclosure sale under section 51.002, any action to recover this deficiency must be brought within two years of the foreclosure sale and a defendant in such an action may be entitled to an offset under 51.003(c) or a credit under 51.003(d). *See id.* § 51.003. Based on the unambiguous language of section 51.003, the Legislature did not create a claim or other basis upon which a person may be liable for a deficiency. *See id.* Any such

liability arises from a different source, for example, a person's liability under a promissory note or a guaranty agreement. In section 51.003, the Legislature addressed the statute of limitations for such an action and a potential offset and credit; the Legislature did not address the source of the liability itself. *See id.* For the foregoing reasons, we conclude that section 51.003 does not create an independent claim.[2] *See Martin v. PlainsCapital Bank*, No. 05-10-00235-CV, — S.W.3d—,—, 2013 WL 1313770, at *5 (Tex. App.—Dallas Mar. 28, 2013. pet. filed) (holding that section 51.003 did not create a right to sue for a deficiency and that it merely regulates a right that arises from a different source); *Trunkhill Capital, Inc. v. Jansma*, 905 S.W.3d 464, 468 (Tex. App.—Waco 1995, writ denied) (same as *Martin*). A deficiency remained after the nonjudicial foreclosure sale under section 51.002 on February 6, 2007, and International's claim against Sowell for breach of the Guaranty is an action to recover this deficiency that is governed by section 51.003. *See* Tex. Prop. Code Ann. § 51.003(a); *Village Place, Ltd. v. VP Shopping, LLC*, No. 01-12-00364-CV, —S.W.3d—,—, 2013 WL 2181371, at *9–12 (Tex. App.—Houston [1st Dist.] May 21, 2013, no pet.). Under the unambiguous language of section 51.003, International had to file this action within two years of February 6, 2007, the date of the foreclosure sale. *See* Tex. Prop. Code Ann. § 51.003(a); *National Enterprise, Inc. v. E.N.E. Properties*, 167 S.W.3d 39, 42–43 (Tex. App.—Waco 2005, no pet.); *Trunkhill Capital, Inc.*, 905 S.W.3d at 468. International filed this suit on February 4, 2009, within two years of the foreclosure sale.

---

[2] Some language in *National Enterprise, Inc. v. E.N.E. Properties* indicates that a creditor has a deficiency claim under section 51.003 that accrues on the date of foreclosure. *See* 167 S.W.3d 39, 42–43 (Tex. App.—Waco 2005, no pet.). To the extent the *National Enterprise* court concluded that section 51.003 creates an independent claim, we decline to follow its reasoning.

**B.** **Does the four-year statute of limitations under section 16.004 of the Texas Practices and Remedies Code bar International's deficiency action against Sowell?**

Under his first issue, Sowell argues that International cannot recover the deficiency, following the foreclosure sale, because the claim is barred by the statute of limitations in section 16.004. *See* Tex. Civ. Prac. & Rem. Code Ann. §16.004(a) (West 2013). Sowell asserts that the claim against him on the Guaranty accrued by December 30, 2004. When a claim accrues is a question of law. *See Moreno v. Sterling Drug*, 787 S.W.2d 348, 351 (Tex. 1990). A claim generally accrues when facts come into existence that authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). Sowell unconditionally and absolutely guaranteed payment of DSI's debt, the guaranteed indebtedness. In the Guaranty, Sowell waived any requirement that the creditor make demand for payment on him. Under this type of guaranty, the creditor's claim against Sowell accrues if the debt reaches maturity and DSI defaults by not paying it. *See Mid-South Telecommunications Co. v. Best*, 184 S.W.3d 386, 391 (Tex. App.—Austin 2006, no pet.). The guaranteed indebtedness matured on November 30, 2004, and DSI defaulted by not paying this indebtedness. Because Sowell did not pay the indebtedness, we agree with Sowell that by December 30, 2004, facts had come into existence that authorized the creditor to seek a judicial remedy against Sowell on the Guaranty, and the Guaranty claim had accrued. *See id*.

Sowell asserts that the only basis for his liability to International is under the Guaranty and that International's claim on the Guaranty is governed by the four-year statute of limitations in section 16.004. If this four-year statute of limitations applies to International's claim against Sowell on the Guaranty, then this claim is time-barred because International filed suit more than four years after this claim

accrued. The relevant facts are undisputed. The issue is whether the limitations period in section 51.003(a) applies or the limitations period in section 16.004 applies. Research has not revealed, and the parties have not cited, any cases addressing this issue.

Under section 16.004, entitled "Four Year Limitations Period," "[a] person must bring suit on the following actions not later than four years after the day the cause of action accrues: . . . (3) debt . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a) (West 2013). Under section 16.035 of the Texas Practices and Remedies Code, entitled "Lien on Real Property," a nonjudicial foreclosure sale of real property under a power of sale in a mortgage or deed of trust must be conducted not later than four years after the day the claim accrued. Tex. Civ. Prac. & Rem. Code Ann. § 16.035(b) (West 2013). On expiration of this four-year limitations period, the real-property lien and power of sale to enforce the real-property lien become void. *Id.* § 16.035(d) (West 2013).

There are fact patterns in which the limitations provision in section 51.003(a) and the limitations provision in section 16.004 do not conflict. If a creditor elects not to exercise its right to conduct a nonjudicial foreclosure sale and sues a guarantor under a guaranty agreement, then there is no conflict and the suit on the guaranty is governed by the four-year statute of limitations under section 16.004. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a); Tex. Prop. Code Ann. § 51.003(a). *See generally Exxon Corp. v. West Texas Gathering Co.*, 868 S.W.2d 299, 306 (Tex. 1993) (noting general proposition that, in situation not involving an action to recover a deficiency remaining after real property is sold at a foreclosure sale under section 51.002, a suit against a guarantor for breach of his obligations under a guaranty agreement is subject to the four-year statute of limitations under section 16.004). If a creditor sues a guarantor under a guaranty agreement and obtains a judgment before the creditor conducts a nonjudicial foreclosure sale, then

9

there is no conflict and the suit on the guaranty is governed by the four-year statute of limitations under section 16.004.[3] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a); Tex. Prop. Code Ann. § 51.003(a); *West Texas Gathering Co*., 868 S.W.2d at 306. If a creditor sues a guarantor under a guaranty agreement and the suit is still pending when the creditor conducts a nonjudicial foreclosure sale, then there is no conflict and the suit on the guaranty is governed by the four-year statute of limitations under section 16.004.[4] *See* Tex. Civ. Prac. & Rem. Code Ann. §16.004(a); Tex. Prop. Code Ann. § 51.003(a); *West Texas Gathering Co*., 868 S.W.2d at 306.

But, in the fact pattern presented to the court today there is an irreconcilable conflict between section 51.003(a) and the limitations period in section 16.004. Under the unambiguous language of section 51.003(a), this statute applies, and International's suit is timely because International filed it within two years of the foreclosure sale. *See* Tex. Prop. Code Ann. § 51.003(a). Under the unambiguous language of section 16.004, this statute applies and International's suit is time-barred because International filed it more than four years after the day the claim accrued. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a).

Government Code section 311.026, entitled "Special or Local Provision Prevails Over General," reads in its entirety as follows:

---

[3] In this situation, the limitations provision of section 51.003(a) is not triggered, and section 51.005 provides a procedure by which the guarantor can seek the offset or the credit contained in section 51.003. *See* Tex. Prop. Code Ann. § 51.005 (West 2013).

[4] The nonjudicial foreclosure sale would have to have been conducted within four years of the day the claim accrued. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035(b). Because, in this situation, suit was filed before the nonjudicial foreclosure sale, the suit was filed within the four-year limitations period of section 16.004 and was pending when the foreclosure sale occurred.

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

Tex. Gov't Code Ann. § 311.026 (West 2013). The rule of statutory construction contained in Government Code section 311.026(b) applies only if the general provision and the special provision irreconcilably conflict with each other. In today's fact pattern there is an irreconcilable conflict, and the general provision, section 16.004, is not the later enactment. Therefore, section 51.003, the special provision, prevails as an exception to the general provision. *See id*.; *In re Allcat Claims Serv., Inc.*, 356 S.W.3d 455, 471 (Tex. 2011). In this situation, if a deficiency remains after a nonjudicial foreclosure sale under section 51.002 conducted before the creditor files suit against a guarantor, then the effect of section 51.003 is to extend the limitations period under section 16.004 so that it ends two years after the date of the foreclosure sale. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a); Tex. Prop. Code Ann. § 51.003(a).

Sowell argues that this court should harmonize these two statutes and hold that if a lender conducts a nonjudicial foreclosure sale before suing a guarantor, the statute of limitations for filing an action to recover any deficiency should be the lesser of two years after the foreclosure sale or the time remaining under the four-year statute under section 16.004. But, under the fact pattern in today's case there is an irreconcilable conflict between section 51.003 and section 16.004, and under Government Code section 311.026(b), we resolve this conflict by giving effect to section 51.003, the special provision. *See* Tex. Gov't Code Ann. § 311.026; *In re*

11

*Allcat Claims Serv., Inc.*, 356 S.W.3d at 471. We decline to adopt Sowell's analysis, which is contrary to these authorities and would give effect to section 16.004, the general provision.

Sowell asserts that interpreting section 51.003 to extend the limitations period under the fact pattern in today's case is inconsistent with public policy and provides no certainty to defendants. Though in this context the two statutes irreconcilably conflict, they still are unambiguous, and we are giving effect to the plain meaning of the more specific statute under section 311.026 of the Texas Government Code. It is not this court's function to question the wisdom of these statutes or to seek to rewrite them based upon our view of public policy. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000); *Lee v. City of Houston*, 807 S.W.2d 290, 293 (Tex. 1991). In any event, under the current statutory framework, guarantors are on notice that they may be sued for breach of their guaranty obligations within four years after the claim accrues and that this limitations period may be extended to two years after the date of foreclosure if a deficiency remains after a nonjudicial foreclosure sale under section 51.002.[5]

For the foregoing reasons, we conclude that, under section 51.003(a), the limitations period for International's claims against Sowell under the Guaranty expired two years after the date of the foreclosure sale, which occurred less than four years after these claims accrued. *See* Tex. Prop. Code Ann. §51.003(a). Because International filed suit within this period, the trial court did not err in

---

[5] Sowell also asserts that interpreting section 51.003 to extend the limitations period under the fact pattern in today's case is contrary to the legislative history of section 51.003. But, we cannot use legislative history to interpret a statute in a way that contradicts the statute's unambiguous language. *See Fleming Foods of Texas, Inc. v. Rylander*, 6 S.W.3d 278, 283–84 (Tex.1999).

concluding that International's claims against Sowell are not barred by the statute of limitations. Accordingly, we overrule Sowell's first issue.

**C.    Did Sowell conclusively prove that International's claims against him are barred due to International's alleged failure to mitigate damages?**

Under his second issue, Sowell argues International's claims are barred because the trial evidence conclusively proved that International and its predecessors in interest breached their duty to mitigate and avoid unnecessary damages by delaying foreclosure. According to Sowell, if there had been a prompt foreclosure, then there would have been no deficiency. We presume for the sake of argument that International and its predecessors-in-interest generally would have a duty to mitigate and avoid unnecessary damages by delaying foreclosure. International asserts that Sowell waived any right he had to assert this defense under the unambiguous language of the Guaranty.

In construing contracts, our primary objective is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex. 1998). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex. 1996). Ambiguity does not arise simply because the parties offer conflicting interpretations. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Heritage Res., Inc.,* 939 S.W.2d at 121. But, when a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co.,* 124 S.W.3d at 157.

Under the Guaranty, Sowell agreed as follows:

13

7.     Guarantor waives any right to require Lender to (a) proceed against, or make any effort at the collection of the Guaranteed Indebtedness from Borrower or any other guarantor or party liable for the Guaranteed Indebtedness; (b) proceed against or exhaust any collateral held by Lender; or (c) pursue any other remedy in Lender's power whatsoever . . . Guarantor waives any defense arising by reason of any disability, lack of corporate authority or power, or other defense of Borrower or any other guarantor of the Guaranteed Indebtedness, and Guarantor shall remain liable under this Guaranty regardless of whether Borrower or any other guarantor be found not liable on the Guaranteed indebtedness for any reason including, without limitation, insanity, minority, disability, bankruptcy, insolvency, death or corporate dissolution even though rendering the Guaranteed Indebtedness void or unenforceable or uncollectible as against Borrower or any other guarantor. . . .

11.     The liability and obligations of Guarantor hereunder is a guaranty of payment and not of collectability and is not conditioned or contingent upon the genuineness, validity, regularity or enforceability of the Loan Documents and shall not be affected or impaired by (a) the failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection or other handling or treatment of all or any part of the collateral securing payment of all or any part of the Guaranteed Indebtedness, (b) the failure of any security interest or lien intended to be granted or created to secure the Guaranteed Indebtedness to be properly perfected or created or the unenforceability of any security interest or lien for any other reason, or (c) the subordination of any such security interest or lien to any other security interest or lien.

Under the unambiguous language of the Guaranty, Sowell waived his right to assert the failure-to-mitigate-damages defense that he raises in his second issue. *See Tran v. Compass Bank,* No. 02-11-00189-CV, 2012 WL 117859, at *2 (Tex. App.—Fort Worth Jan. 12, 2012, no pet.) (holding that, under plain meaning of language in guaranty, guarantor had waived any rights or defenses based upon offset) (mem. op.); *Compass Bank v. 288/59 GP, LLC*, No. H-09-4099, 2011 WL 13688, at *2–3 (S.D. Tex. Jan. 4, 2011) (applying Texas law and holding that, under guaranty's unambiguous language, guarantors had waived their rights to

offset under section 51.003 with respect to the guaranties and properties at issue).

Sowell argues that the failure-to-mitigate-damages defense reflects fundamental Texas public policy and therefore cannot be waived. Sowell cites no cases in which courts have held that that this defense reflects fundamental Texas public policy or that it cannot be waived. We conclude that allowing a contracting party to choose to waive this defense does not violate Texas public policy. *See LaSalle Bank National Ass'n v. Sleutel*, 289 F.3d 837, 840–41 (5th Cir. 2002) (applying Texas law); *Interstate 35/Chisam Road, L.P. v. Moayedi*, 377 S.W.3d 791, 801 (Tex. App.—Dallas 2012, pet. filed); *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 278–79 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd). By entering into the Guaranty, Sowell waived his right to assert the failure-to-mitigate-damages defense that he raises in his second issue. *See Tran*, 2012 WL 117859, at *2; *Compass Bank*, 2011 WL 13688, at *2–3. Accordingly, we overrule Sowell's second issue.

## V. Conclusion

Under section 51.003(a), the limitations period for International's claims against Sowell under the Guaranty expired two years after the date of the foreclosure sale. Because International filed suit within this period, the trial court did not err in concluding that International's claims against Sowell were not barred by statute of limitations. Under the Guaranty, Sowell waived his right to assert the failure-to-mitigate-damages defense.

The trial court's judgment is affirmed.


/s/    Kem Thompson Frost
Justice


Panel consists of Justices Frost, Christopher, and Jamison.